# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**ANDREW ALEXANDER**　　　　　　　　　　　　　　　　　　　　　　　**PLAINTIFF**
**Reg #32500009**

**V.**　　　　　　　　　　**CASE NO. 5:19-CV-323-BD**

**DALLAS COUNTY DETENTION CENTER,** *et al.*　　　　　　　**DEFENDANTS**

## ORDER

Plaintiff Andrew Alexander, an inmate currently incarcerated in the Yazoo City Medium Federal Correctional Institution, filed this civil rights lawsuit without the help of a lawyer. (Doc. No. 1) In his complaint and amended complaint, Mr. Alexander claims that Defendants subjected him to unconstitutional conditions of confinement and failed to provide him with adequate medical care while he was detained in the Dallas County Detention Center (Detention Center).[1]  (Doc. Nos. 1, 5) Dusty Dodson is the only remaining Defendant.[2]

Defendant Dodson has moved for summary judgment, contending that he did not violate Mr. Alexander's constitutional rights and, alternatively, that he is entitled to qualified immunity. (Doc. No. 29) Mr. Alexander has responded. (Doc. No. 33)

---

[1] All other claims and Defendants have been dismissed. (Doc. Nos. 7, 15)

[2] The Clerk of the Court is instructed to update the spelling of Defendant Dodson's name from Dotson to Dodson. (Doc. No. 31-1)

I. **Standard**

Summary judgment means that the court rules in favor of a party without the need for a trial. As the moving party here, Defendant Dodson is entitled to summary judgment only if the evidence, viewed in a light most favorable to Mr. Alexander, shows that there is no genuine dispute as to any fact that is important to the outcome of the case. If there are genuinely disputed facts that might affect how the case is decided, the Court will view those facts in a light most favorable to Mr. Alexander, unless his version of the facts would not be believed by any reasonable jury. *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007). FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

II. **Factual Background**

In support of his claims, Mr. Alexander alleges: that mold and mildew at the Detention Center impeded his breathing; that there were spiders in his cell; that there were no intercoms in his cell or in the day room; that the water in the showers was too hot; and, that the toilet and water fountain in the day room did not work. (Doc. Nos. 1, 5) According to Mr. Alexander, he alerted Defendant Dodson about the mold and mildew and requested medical attention, but Defendant Dodson failed to assist him. (Doc. No. 5)

Defendant Dodson, the jail administrator at the Detention Center, does not dispute allegations that there were spiders in his cell, that there were no intercoms, that the water

in the showers was hot, or that the toilet and water foundation in the day room were out of order. He contends, however, that these conditions do not rise to the level of constitutional deprivations.

According to Defendant Dodson's affidavit filed in support of his motion for summary judgment, inmates and detainees, including Mr. Alexander, were given mops, brooms, and cleaning supplies so that they could clean cells and the day room. (Doc. No. 31-1) In addition, he states, inmate trusties periodically cleaned the cells. (Doc. No. 31-1) Defendant Dodson concedes that there was mold in the shower stalls, but he argues that the showers were regularly cleaned. (Doc. No. 31-1) Also, Defendant Dodson submits the November 5, 2019 report of the Criminal Detention Facilities Review Committee, which inspected the Detention Center and found that the cells at the Detention Center met the general housing standards. (Doc. No. 31-3, p.8)

Mr. Alexander states that he is "a chronic care patient that suffer[s] from asthma"; and he believes that the mold affected his breathing. (Doc. No. 33) He filed medical grievances on October 21 and on November 5, 2019, asking to see a doctor. (Doc. Nos. 31-4, 31-5) According to Defendant Dodson's affidavit, Mr. Alexander refused to see the doctor each time he was provided the opportunity. (Doc. Nos. 31-1) And, Defendant Dodson provides nurse's notes indicating Mr. Alexander refused to see a doctor on both October 24 and on November 7. (Doc. No. 31-4, 31-5)

3

Mr. Alexander disputes that he refused to see a doctor. (Doc. No. 33) Therefore, for purposes of deciding the motion for summary judgment, the Court will assume that Mr. Alexander's recollection is correct and that he did <u>not</u> refuse to see the doctor.

It is not clear from this record precisely when Mr. Alexander did see a doctor, but he concedes that he was examined by a doctor on three separate occasions for spider bites. (Doc. No. 33, p.4) He alleges that he was provided the wrong medication for the spider bites at those visits. (Doc. No. 33, p.4)

**III     Discussion**

 A. Individual Capacity Claims

"Qualified immunity shields public officials from liability for civil damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (*en banc*) (internal quotation marks omitted). Officials are not liable for bad guesses in gray areas of the law; they are liable for "transgressing bright lines." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011) (citing *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007)).

  1. Conditions-of-Confinement Claims

Because Mr. Alexander was a pretrial detainee at the time of the alleged violations, his claims are analyzed under the Fourteenth Amendment rather than the

Eighth Amendment. Regardless, the standard is essentially the same.[3] *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979); *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 905 (8th Cir. 2020); *Morris v. Zefferi*, 603 F.3d 805, 809 (8th Cir. 2010); *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

Conditions-of-confinement claims require a showing of either a deprivation of the minimal measure of life's necessities *or* conditions that posed a substantial risk of serious harm to health or safety. A defendant can be held liable, however, only if he knew of unconstitutional conditions but failed to take appropriate remedial measures. *See Davis v. Oregon County, Mo.*, 607 F.3d 543, 548-49 (8th Cir. 2010); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004); *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998)

The Court will assume there that was mold present in the cells and the showers at the Detention Center in spite of cleaning efforts. Even so, as the Court of Appeals noted in a recent decision, there is, "no controlling authority" or "robust consensus of persuasive authority" clearly establishing an inmate's right to be housed in a facility free from mold or other allergens. *Thurmond v. Andrews*, 972 F.3d 1007, 1013 (8th Cir. 2020). There is no evidence in this record to indicate that the mold found at the Detention Center was toxic. Based on the *Thurmond* decision, Defendant Dodson is entitled to qualified immunity on all individual-capacity claims against him related to an alleged

---

[3] Pretrial detainees are entitled to protection "at least as great" as that afforded convicted prisoners under the Eighth Amendment. *City of Revere v. Mass Gen. Hosp.*, 463 U.S. 239, 244 (1983).)

failure to adequately address mold and mildew in the Detention Center during Mr. Alexander's detention.

As to Mr. Alexander's allegations regarding spiders, a lack of intercoms, excessive water temperatures in the showers, and out-of-order toilets and water fountains in the day room, those conditions, even taken together, are not so dire as to amount to either a "deprivation of the minimal measure of life's necessities" or a substantial risk of serious harm to his health or safety. Mr. Alexander does not allege that these conditions were imposed as punishment; and he does not allege that he was burned by excessively hot water in the shower. Likewise, he does not allege that he was denied access to toilets or potable drinking water. Therefore, these jail conditions, while undoubtedly unpleasant, do not rise to the level of unconstitutional conditions of confinement.

2. Inadequate-Medical-Care Claims

To succeed on an inadequate-medical-care claim, a prisoner must prove that he had an objectively serious medical need and that prison officials knew of that need but deliberately disregarded it.[4] *Estelle v. Gamble*, 429 U.S. 97, 104-08 (1976); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). That said, negligence—even gross negligence—cannot support a claim

---

[4] Because Mr. Alexander was a pretrial detainee, his inadequate-care claims are analyzed under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The standard is the same, however, under both Fourteenth and Eighth Amendments. *Vaughn v. Greene County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006).

6

for inadequate care. Likewise, a prisoner's disagreement with treatment decisions does not rise to the level of a constitutional violation. *Langford,* 614 F.3d at 460; *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

To the extent Mr. Alexander claims that he was injured by a delay in receiving treatment, the record does not support such a claim. To avoid summary judgment, Mr. Alexander would have to come forward with verifying medical evidence that he suffered a detrimental hearth effect caused by the alleged delay in medical treatment. *Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006); *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997). In other words, an inmate must show that a defendant ignored a critical or escalating medical situation, or that the delay adversely affected the inmate's prognosis. *Id.* Even assuming Mr. Alexander's version of the facts, he has not alleged or come forward with evidence that he suffered from any harm by not seeing a doctor in October and November of 2019.

Mr. Alexander alleges that a Detention Center doctor gave him the "wrong medication" for spider bites. There is no evidence to support this allegation. Significantly, detainees are not entitled to any particular course of treatment or to their preferred course of treatment. *Langford v. Norris*; 614 F.3d 445, 460 (8th Cir. 2010); *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008); *Dulany v. Carnahan*, 132 F.3d 1234,1240 (8th Cir. 1997). Mr. Alexander's disagreement with the medication prescribed for spider bites is insufficient to support a federal claim for relief.

7

### B. Official Capacity Claims

Mr. Alexander's claims against Defendant Dodson in his official capacity are, in effect, claims against Dallas County, Arkansas. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010). Here, Dallas County can be held liable only if its employees violated Mr. Alexander's rights in the course of carrying out a County policy or custom. *Monell v. New York Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978)*; *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 632 (8th Cir. 2009).

There are no allegations and no evidence to indicate that Dallas County "through its deliberate conduct . . . was the 'moving force' behind" any injury to Mr. Alexander. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (internal citations omitted). Accordingly, Mr. Alexander's official-capacity claims fail.

### C. Unrelated Pending Motion

Mr. Alexander has requested two § 1983 complaint forms and two *in forma pauperis* application forms. (Doc. No. 34) The motion is GRANTED. The Clerk of the Court is directed to send Mr. Alexander the requested forms.

## VI. Conclusion

Defendant Dodson's motion for summary judgment (Doc. No. 29) is GRANTED. Mr. Alexander's claims are DISMISSED, with prejudice. The Clerk is instructed to close this case.

IT IS SO ORDERED, this 21st day January, 2021.

_____
UNITED STATES MAGISTRATE JUDGE